### IN THE UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANTHONY BILLINGER, | CIVIL DIVISION |
| Plaintiff, | No. 2:22-cv-1408 |
| v. | |
| ADAPTIVE BIOTECHNOLOGIES CORPORATION, | **JURY TRIAL DEMANDED** |
| Defendant. | |

### COMPLAINT

AND NOW, comes Plaintiff, Anthony Billinger, by and through his attorneys, Robb Leonard Mulvihill LLP and Bruce E. Rende, Esquire and files the following Complaint, averring as follows:

### PARTIES

1.      Plaintiff, Anthony Billinger ("Billinger"), is an individual and citizen of the Commonwealth of Pennsylvania.

2.      Defendant, Adaptive Biotechnologies Corporation ("Adaptive"), was and is a for-profit corporation existing under the laws of the State of Washington with a principal place of business located at 1551 Eastlake Avenue, East Suite, Seattle, Washington 98102.

3.      Adaptive is registered to do business in the Commonwealth of Pennsylvania and, upon information and belief, does in fact transact business in this Commonwealth.

4.      At all times material and relevant, Adaptive was acting through its agents, servants, and employees, who were authorized and acting within the scope of their agency, servancy and employment, and under the direct control supervision and direction of Adaptive.

{R1363878.1 }

5.      At all times material and relevant, Adaptive has been a "person" and "employer" as defined under Title VII and the Pennsylvania Human Relations Act ("PHRA") and is accordingly subject to the provisions of said Acts.

6.      Billinger brings this action under Title VII and the PHRA.[1] 42 U.S.C.A. § 2000e, *et seq.*; 43 P.S. §951, *et seq.*

## ADMINISTRATIVE PROCEDURES

7.      Billinger timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). The filing also constituted an initiation of proceedings with the Pennsylvania Human Relations Commission ("PHRC") pursuant to and by operation of the work sharing agreement between the EEOC and the PHRC.

8.      Billinger was issued a Notice of Right to Sue from the EEOC ("Notice"), which was mailed to Billinger on July 14, 2022. (A true and correct copy of the Notice is attached hereto as **Exhibit "A"**).

9.      This action has been filed within ninety (90) days of receipt of said Notice.

10.     Billinger has complied with all conditions precedent to filing this Complaint.

## JURISDICTION AND VENUE

11.     The original jurisdiction of this Court is invoked pursuant to Title 28 U.S.C. §1331, and the claim(s) are substantively based on Title VII.

12.     Venue is appropriate in the Western District of Pennsylvania pursuant to 42 U.S.C.A. §2000e-5(f)(3) because this is the judicial district in which Billinger worked and would have worked but for the alleged unlawful employment practice(s) of Adaptive.

---

[1] Billinger intends to amend his Complaint to include claims under the PHRA once his claims have been administratively exhausted with the Pennsylvania Human Relations Commission. Such claims will mirror Billinger's federal claims asserted herein under Title VII.

{R1363878.1 }                                    2

13. This Court may properly assert personal jurisdiction over Adaptive because its contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Adaptive to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *In't Shoe Co. v.* Washington, 326 U.S. 310 (1945), and its progeny.

## FACTUAL ALLEGATIONS

14. Billinger incorporates by reference all previous paragraphs of this Complaint as though set forth fully herein.

15. Billinger, a devout Christian, was employed by Adaptive from November 2018 until September 27, 2021, the date of his untimely and improper termination.

16. Adaptive hired Billinger to work in a remote capacity as a Key Account Manager with the Diagnostic Sales Team in November 2018.

17. In his role as a Key Account Manager, Billinger provided strategic input into the development and alignment of an overall Adaptive strategic plan, including field representation input and customer perspective communication. He also led and participated in cross-functional business team meetings to provide customer support and maintained an awareness of marketplace dynamics.

18. On or around January 4, 2021, due to his diligence, performance, and consistency in meeting key goals, all while working in a remote capacity, Billinger was promoted to the role of Integrative Delivery Networks Manager-East ("IDN Manager").

19. As an IDN Manager, Billinger communicated and met with various Adaptive clients to provide customer support.

20. At all times relevant hereto, Billinger maintained, at minimum, a satisfactory job performance in his role as an IDN Manager.

{R1363878.1 }                                3

21.     During his employment with Adaptive, Billinger was subjected to repeated, invidious discrimination and harassment because of his religion, Christianity.

22.     Specifically, in or around July 2021, Adaptive announced it was requiring its employees to be fully vaccinated against SARS-CoV-2 ("Covid-19") and after a variety of revisions, Adaptive implemented a Mandatory COVID-19 Vaccination Policy ("Mandatory Vaccination Policy").

23.     In its Mandatory Vaccination Policy, Adaptive demanded its employees be fully vaccinated or have an approved exemption to engage in any onsite meetings within the company and/or with clients by September 30, 2021.

24.     Under the Mandatory Vaccination Policy, an Adaptive employee may request an exemption to the requirement that he or she receive the Covid-19 vaccination for either a medical reason or because of a sincerely held religious belief.

25.     Billinger maintains strong and firmly held Christian religious beliefs, which were known to his co-workers, supervisors, and clients while he was employed by Adaptive.

26.     Indeed, prior to his unlawful termination, Billinger sought to create a Christian Employee Resource Group ("ERG") for Adaptive Employees across the United States. But, when Billinger presented the idea, Adaptive leadership categorized the Christian ERG as a "social club" in nature, compared to the soon-to-be formed Environmental Sustainability ERG, Asian American ERG, and Veterans ERG.

27.     Because of Billinger's strong and firmly held Christian beliefs, he informed Adaptive of his dissent to the Mandatory Vaccination Policy and completed a Request for Religious Exemption from COVID-19 Vaccine Form for Employees ("Religious Exemption Request").

28.     Billinger submitted his Religious Exemption Request to Adaptive's People and Culture Team ("PaCT") on or around September 9, 2021.

29.     In response to his Religious Exemption Request, Billinger was repeatedly harassed, questioned, and his religious beliefs were belittled by the PaCT—resulting in his Religious Exemption Request being denied on September 20, 2021.

30.     Seven days after the rejection of his Religious Exception Request, on September 27, 2021, Adaptive unlawfully fired Billinger because of his sincerely held religious beliefs and religious objections to obtaining the Covid-19 vaccination.

## COUNT I

### TITLE VII—DISCRIMINATION
*Anthony Billinger v. Adaptive Biotechnologies Corporation*

31.     Billinger incorporates by reference all previous paragraphs of this Complaint as though set forth fully herein.

32.     Billinger is a devout Christian who maintains sincerely held religious beliefs and practices which were known to his Adaptive co-workers, supervisors, and clients.

33.     Due to Billinger's faith, he objected to receiving the Covid-19 vaccination and could not comply with Adaptive's Mandatory Vaccination Policy.

34.     Thus, Billinger sought and applied for a Religious Exemption Request.

35.     Billinger provided voluminous information, documentation, and explanation as to his religious convictions to the PaCT.

36.     In fact, Billinger went through four rounds of inquiry from the PaCT to explain his religious beliefs and the basis for those beliefs.

37.     Yet, Billinger's Religious Exemption Request was denied by Adaptive and, seven days later, Adaptive terminated his employment with the company.

38.    Because Billinger's sincerely held religious beliefs conflicted with Adaptive's Mandatory Vaccination Policy, Billinger was treated differently than similarly situated employees.

39.    Indeed, upon information and belief, other Adaptive employees applied for Religious Exemption Requests and, unlike Billinger, the PaCT granted those exemptions.

40.    Adaptive's intentional, discriminatory conduct in, inter alia, denying his Religious Exemption Request, subjecting him to four rounds of inquiry as to the sincerity of his religious beliefs, and, ultimately, terminating him in close proximity to denying his Religious Exemption Request, constitute violations of Title VII.

WHEREFORE, for the foregoing reasons, Billinger respectfully requests judgment be rendered in his favor and against Adaptive in an amount to be determined with attorneys' fees and costs as well as any other relief or damages deemed proper by this Honorable Court.

## COUNT II

### TITLE VII—HARASSMENT
### *Anthony Billinger v. Adaptive Biotechnologies Corporation*

41.    Billinger incorporates by reference all previous paragraphs of this Complaint as though set forth fully herein.

42.    Adaptive's harassment and discrimination as to Billinger's religious beliefs was intentional and offensive to Billinger as the PaCT argued, demeaned, and repeatedly questioned the sincerity of Billinger's Christian religious beliefs and objections to the Covid-19 vaccine.

43.    The harassment Billinger faced was severe or pervasive in that he was repeatedly subjected to offensive, hostile, and derogatory questioning and working conditions because of his religious beliefs.

44.     Billinger was continuously working through and defending his religious beliefs from the PaCT's four rounds of hostile questioning all while attempting to continue in his day-to-day job duties.

45.     The harassment, through Adaptive's PaCT and/or its agents, servants, and employees, detrimentally affected Billinger.

46.     Indeed, the harassment was so severe that Billinger was forced to take time off from work due to his anxiety and mental anguish over the exemption process.

47.     The harassment Billinger faced would have detrimentally affected a reasonable Christian individual in Billinger's position.

WHEREFORE, for the foregoing reasons, Billinger respectfully requests judgment be rendered in his favor and against Adaptive in an amount to be determined with attorneys' fees and costs as well as any other relief or damages deemed proper by this Honorable Court.

## COUNT III

### TITLE VII—FAILURE TO ACCOMMODATE
*Anthony Billinger v. Adaptive Biotechnologies Corporation*

48.     Billinger incorporates by reference all previous paragraphs of this Complaint as though set forth fully herein.

49.     Billinger holds sincere religious Christian beliefs which conflicted with Adaptive's Mandatory Vaccination Policy.

50.     Billinger informed Adaptive of the conflict and attempted to comply with Adaptive's Mandatory Vaccination Policy by timely submitting his Religious Exemption Request Form seeking an accommodation to Adaptive's Mandatory Vaccination Policy.

51.     Despite explaining and defending his religious beliefs ad nauseum to the PaCT, Billinger's Religious Exemption Request was denied.

52.     A mere seven days later, Adaptive fired Billinger for failing to comply with Adaptive's Mandatory Vaccination Policy.

53.     Adaptive refused to engage in a beneficial interactive process to reach an amenable accommodation for Billinger.

54.     Rather, Adaptive leadership repeatedly discriminated against, harassed, demeaned, and belittled Billinger and his religious beliefs and objections relative to the Covid-19 vaccination.

55.     No undue hardship would have resulted had Adaptive accommodated Billinger's religious beliefs and granted his Religious Exemption Request. Indeed, upon information and belief Adaptive provided accommodations to other Adaptive employees due to their Religious and/or Medical Exemptions.

56.     Further, Billinger was working remotely even prior to the onset of Covid-19 and could have taken other precautions to protect against transmitting Covid-19 when meeting with clients or other Adaptive employees (i.e., masks, temperature screenings, etc.)

57.     The unlawful employment practices to which Billinger was subjected were intentional or committed with reckless indifference to his federally protected rights.

WHEREFORE, for the foregoing reasons, Billinger respectfully requests judgment be rendered in his favor and against Adaptive in an amount to be determined with attorneys' fees and costs as well as any other relief or damages deemed proper by this Honorable Court.

## COUNT IV

### TITLE VII—RETALIATION
*Anthony Billinger v. Adaptive Biotechnologies Corporation*

58.     Billinger incorporates by reference all previous paragraphs of this Complaint as though set forth fully herein.

{R1363878.1 }                                      8

59. Billinger engaged in protected activity by opposing the PaCT's relentless questioning and harassment as to the sincerity of his Christian beliefs and/or his interpretation of scripture.

60. Indeed, Billinger referred to Title VII twice in correspondence to Adaptive leadership and opined that the questioning by the PaCT had overreached and was illegal.

61. Notably, the PaCT neglected to respond to Billinger's concerns regarding the PaCT's overreach and/or Title VII implications.

62. And, following Billinger's resistance on the explicit basis of Title VII, Adaptive fired him a mere four days later.

63. The temporal proximity between Billinger's opposition to the PaCT's line of questioning on the basis of Title VII and his termination is incredibly suggestive of retaliation.

64. The actions of Adaptive, through its agents, servants, and employees, in subjecting Billinger to religious discrimination and harassment, and in terminating Billinger's employment in retaliation for opposing unlawful religious discrimination and harassment constitute a violation of Title VII.

WHEREFORE, for the foregoing reasons, Billinger respectfully requests judgment be rendered in his favor and against Adaptive in an amount to be determined with attorneys' fees and costs as well as any other relief or damages deemed proper by this Honorable Court.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Anthony Billinger, respectfully requests this Honorable Court enter judgment in his favor and:

A. Award Billinger compensatory damages, including lost wages, employment benefits, back pay, interest, punitive damages, and any and all other pecuniary damages for violation of his rights and for the injuries he suffered as a result of Adaptive's conduct;

B.      Award Billinger the costs of this action, including reasonable attorneys' fees and reasonable expert witness fees;

C.      Award any such further relief as this Court may deem just, proper, and equitable and as permitted under Title VII.

Respectfully Submitted,

ROBB LEONARD MULVIHILL LLP

Date:   October 7, 2022                    By:     /s/ Bruce E. Rende
                                                   Bruce E. Rende, Esquire
                                                   PA ID# 52714
                                                   Madison E. Baric, Esquire
                                                   PA ID# 328976
                                                   BNY Mellon Center
                                                   500 Grant Street, Suite 2300
                                                   Pittsburgh, PA 15219
                                                   P: (412) 281-5431
                                                   F: (412) 281-3711
                                                   Email: brende@rlmlawfirm.com
                                                          mbaric@rlmlawfirm.com